UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
————

JOHN HENRY McMURRY,

                Plaintiff,              Case No. 1:07-cv-716

v.                                Honorable Janet T. Neff

PATRICIA CARUSO, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  On September 4, 2007, this Court ordered service of Plaintiff's complaint on Defendants Patricia Caruso, Shirlee Harry, Mark Malone, Brett Barbier, and Donna Fritz.  On December 19, 2007, Defendants Caruso, Harry, Barbier and Fritz filed a motion for summary judgment (docket #39) on the ground that Plaintiff failed to exhaust his available administrative remedies.  Defendant Malone filed a separate motion for summary judgment (docket #50), incorporating by reference the arguments of the other Defendants. Plaintiff filed responses (docket ##57, 60) on or about January 16 and 24, 2008.  All Defendants joined in a single reply (docket #62), and Plaintiff filed a surreply and affidavit (docket ##66-67). Upon review, I recommend that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be denied.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff presently is incarcerated at the Muskegon Correctional Facility (MCF). In his *pro se* complaint, he sues MDOC Director Patricia Caruso and the following MCF employees: Warden Shirlee Harry, Assistant Deputy Warden Mark Malone, Resident Unit Manager Brett Barbier, and Resident Unit Supervisor Donna Fritz.

Since March 14, 2007, Plaintiff has resided in a tobacco-free housing unit at MCF in order to alleviate his serious medical needs. He suffers from asthma, allergies and chronic obstructive pulmonary disease, which cause breathlessness, wheezing, coughing, sleeplessness and choking, whenever he is around smoke. Plaintiff alleges that Defendants violated his Eighth Amendment rights by permitting prisoners housed in the designated tobacco-free unit to purchase and smoke tobacco, causing Plaintiff to be exposed to cigarette smoke. In addition, he alleges that the housing unit ventilation system works only sporadically and, even when working, recirculates smoke-filled air from the common day rooms, bathrooms, hallways and cells throughout the facility.

He also alleges that tobacco smoke from the common exit and entrance doors travels through the hallways and into the unit.  Further, he complains that the prison store sells tobacco products, even to prisoners housed in the non-smoking unit, who are not supposed to possess smoking materials. Finally, he alleges that on June 12, 2007, he was moved out of a cell shared with another non-smoker and placed in a cell with a smoker.

As the result of his continuing exposure to second-hand smoke, Plaintiff alleges that he developed asthma attacks on several dates and required breathing treatments in healthcare on multiple occasions between June 12 and August 8, 2007.  Because of the frequency of the attacks, Plaintiff was given a medical detail for breathing treatments as needed and was prescribed methylprednisone.  Plaintiff asked to be moved to a cell with another non-smoker and was told by Defendants Barbier and Fritz that he had already been placed in a cell with a non-smoker and could receive a move only once per year.

Plaintiff alleges that Defendants' actions violate the Eighth Amendment, state law and MDOC policy.  He also alleges that his continuing exposure to the toxins in environmental tobacco smoke has caused him to be physically impure, preventing him from faithfully practicing his Islamic religion.  In addition, he contends that the physical symptoms caused by the smoke have interfered with his ability to practice all the tenets of his religion.

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.  Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner

must first exhaust available administrative remedies even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective March 5, 2007)[1] sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

---

[1]The MDOC again amended Policy Directive 03.02.130 on July 9, 2007. However, the March 5, 2007 version of the policy directive was in effect during most times applicable to this lawsuit, and the relevant portions of the policy are consistent in both versions, though the paragraph numbering varies slightly.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

A prisoner who abuses the grievance process by filing an excessive number of grievances that are vague, duplicative, raise non-grievable issues or contain prohibited language or a prisoner who is  convicted of a misconduct for filing an unfounded grievance may be placed on modified access.  *Id.* at ¶ HH.  While on modified access, a prisoner may obtain a grievance form only through the Step I Grievance Coordinator.  *Id.* at KK.  The grievance coordinator is required to provide a grievance form to a modified-access prisoner if the issue the prisoner wishes to grieve is grievable and otherwise meets the criteria of the policy.  *Id.*  The grievance coordinator also must keep a record of requests received, whether the request was approved or denied and, if denied, the reason for the denial.  *Id.*

In their motions for summary judgment, Defendants claim that Plaintiff filed only six grievances at MCF that he appealed through Step III of the grievance policy, all of which they attach to their brief.  Defendants argue that, because none of Plaintiff's fully exhausted grievances involved the issues giving rise to his complaint, Plaintiff has failed to exhaust his administrative remedies.

In his verified response, Plaintiff states that, as demonstrated in the documents attached to his complaint and his response brief, he was on modified access during the time he tried to exhaust his grievance.  (*See* Pl.'s Resp. to Def.'s Mot. for Sum. J., docket #57-1.)  Specifically, he avers and provides documentary evidence that he was placed on modified access from May 18, 2007 through August 18, 2007.  (*See* Pl.'s Resp. at 1, docket #57-1; Att. at 15, docket #57-2, memo dated May 18, 2007, notifying Plaintiff that he had been placed on modified access for at least 90 days.)  Plaintiff avers that he filed a grievance on May 27, 2007, before he had been informed of his modified access, in which he complained about his continuing exposure to second-hand smoke.  The grievance, however, was never processed.  (Pl.'s Resp., ¶ 1.)  Plaintiff sent letters of complaint to

Defendants Caruso, Harry and Malone, among others, and he received responses from both Malone and Harry on May 24 and 29, 2007, respectively. (*See* Pl.'s Resp., Att. at 17-22) On June 1, 2007, Plaintiff sent a kite to Grievance Coordinator Matt Brevard, requesting a grievance form. He received no response. (Pl.'s Resp., ¶ 4 & Att. at 30-32.) On June 5, 2007, Plaintiff placed another request for a grievance in the institutional mailbox, but again received no response. (Pl's Resp., ¶ 5 & Att. at 34-35.) Thereafter, on June 6, 11, 12 and 13, 2007, respectively, Plaintiff sent letters to Attorney General Michael Cox, MDOC Deputy Director Dennis Schranz, MCF Inspector Masscorro and Patricia Caruso, all detailing his concerns and seeking help in obtaining a grievance form and having his grievance addressed. (Pl.'s Resp., ¶¶ 5, 6 and 8 & Att. at 27-28, 39-41.) Plaintiff also filed a request for a declaratory ruling with Richard Stapleton in the MDOC Office of Legal Affairs. Stapleton replied that the request was being reviewed and that if Plaintiff did not receive a ruling within 30 days he should consider the request denied. (Pl.'s Resp., ¶ 7 & Att. at 38.) Plaintiff filed his initial complaint on or about July 25, 2007.

In their reply brief, Defendants attach the affidavit of MCF Grievance Coordinator Matt Brevard, who avers that between May 18, 2007 and August 18, 2007, the period during which Plaintiff was on modified access, Brevard received no correspondence from Plaintiff. (Def.'s Reply Br., Ex. A, Aff. of M. Brevard, docket #63-2.) On the basis of Brevard's affidavit, Defendants contend that they are entitled to judgment as a matter of law because no request was received. Defendants' argument is without merit. Plaintiff's averments and his supporting documents clearly create a genuine issue of fact about whether Plaintiff in fact requested grievance forms from the grievance coordinator.

Defendants argue in the alternative that, even if Plaintiff actually sent the documents attached to his response to Brevard, the documents were not in compliance with the modified access policy because they included a subtitle of "Constructive Legal Notice" before the description of the claims being raised and because the requests exceed one page in length. Defendants' argument is unpersuasive. The modified-access policy does not specify the precise form of a request for a grievance. Instead, the policy states simply that the prisoner may obtain a grievance form only from the grievance coordinator and that the "grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ KK. Further, even the policy provisions pertaining to grievances themselves may be longer than a page, if necessary. *Id.* at ¶ R. The substance of Plaintiff's requests was not substantially longer than a page in either case, though Plaintiff added some questions for Brevard following his descriptions of the issue.

Moreover, Brevard expressly avers that he did not receive a request from Plaintiff; he does not claim that Plaintiff's requests were denied because they were improper in form. In other words, Defendants do not suggest that the request for a grievance was rejected because of a procedural default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (the doctrine of procedural default is applicable only where the rule is actually relied upon by the state courts); *see also Woodford*, 548 U.S. at 92 (applying the doctrine of procedural default as it governs habeas corpus petitions); *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006); *Spruill v. Gillis*, 372 F.3d 218, 222 (3rd Cir. 2004) (holding that "the determination

whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations.").

For all these reasons, substantial evidence exists that Plaintiff requested a grievance form from Brevard on at least two occasions.  As a prisoner on modified access, he had no other administrative remedy available to him.  Accordingly, Defendants are not entitled to summary judgment on the grounds that Plaintiff failed to properly exhaust his administrative remedies.

### Recommended Disposition

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket ##39, 50) be denied.


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   December 10, 2008


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).