UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN HENRY MCMURRY,

        Plaintiff,

v.                                                                   Case No. 1:07-cv-716
                                                                   HON. JANET T. NEFF

PATRICIA CARUSO, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff John Henry McMurry, an inmate currently confined at the Carson City Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Patricia Caruso, Shirlee A. Harry, Mark Malone, Brett Barbier, and Donna Fritz. Plaintiff's complaint alleges that at the time he filed his complaint he had resided in a tobacco-free housing unit at the Muskegon Correctional Facility (MCF) since March 14, 2007. Plaintiff claims that he suffers from serious medical needs, including asthma, allergies, and chronic obstructive pulmonary disease (COPD), which cause breathlessness, wheezing, coughing, sleeplessness and choking whenever Plaintiff is exposed to smoke. Plaintiff claims that Defendants violated his Eighth Amendment rights by permitting prisoners housed in the designated tobacco-free unit to purchase and smoke tobacco, causing Plaintiff to be exposed to cigarette smoke. In addition, Plaintiff alleges that the housing unit ventilation system works only sporadically and, even when working, recirculates smoke-filled air from the common day rooms, bathrooms, hallways and cells throughout the facility. Plaintiff states that tobacco smoke from the common exit and entrance doors travels

through the hallways and into the unit. Plaintiff also complains that the prison store sells tobacco products, even to prisoners housed in the non-smoking unit, who are not supposed to possess smoking materials. Finally, Plaintiff asserts that on June 12, 2007, he was moved out of a cell shared with another non-smoker and was placed in a cell with a smoker.

Plaintiff claims that as the result of his continuing exposure to second-hand smoke, he developed asthma attacks on several dates and required breathing treatments in health care on multiple occasions between June 12, 2007, and August 8, 2007. Because of the frequency of the attacks, Plaintiff was given a medical detail for breathing treatments as needed and was prescribed methylprednisone. Plaintiff asked to be moved to a cell with another non-smoker, but Defendants Barbier and Fritz told him that he had already been placed in a cell with a non-smoker and could only receive one move per year.

Plaintiff contends that Defendants' actions violated the Eighth Amendment, state law, and MDOC policy. In addition, Plaintiff states that the exposure to the toxins in environmental tobacco smoke caused him to be physically impure, preventing him from faithfully practicing his Islamic religion, and that his symptoms have interfered with his ability to practice all tenets of his religion.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff claims that his Eighth Amendment rights were violated by Defendants' actions because they caused him to be exposed to environmental tobacco smoke (ETS) in his cell at MCF. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. When prison officials ignore a prisoner's serious medical condition such as allergy or asthma related to second-hand smoke and do not make a good-faith effort to enforce non-smoking policies or to segregate a prisoner from exposure to smoke, a prisoner may state an Eighth Amendment claim based upon exposure to environmental tobacco smoke. *See Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)(citing *Hunt v. Reynolds*, 974 F.2d 734, 726 (6th Cir. 1992)). The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care

would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). A prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

*Helling v. McKinney,* 509 U.S. 25 (1993), is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[1] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id*. Relevant to the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id*. at 36.

Defendants note that since February 1, 2009, inmates in Michigan prisons have been forbidden to smoke or possess tobacco. *See* MDOC Policy Directive 01.03.140(G, I) (Defendants' Exhibit A). Prior to that, all Michigan prisons, including MCF, were completely smoke-free inside. Therefore, neither prisoners nor staff were permitted to smoke inside the buildings. *See* MCF Operating Procedure 01.03.140(B, C) (Defendants' Exhibit B). Defendant Barbier attests that there is a fire-evacuation line painted on the sidewalk outside of the housing units at MCF, and that

---

[1] The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

prisoners were required to stand beyond that point when smoking. (Defendants' Exhibit C, ¶ 3.) Defendants Barbier and Harry attest that prisoners caught violating the no-smoking rules were regularly issued misconduct tickets, and that 341 such tickets were written at MCF between January 1, 2007, and October 24, 2007. (Defendants' Exhibit C, ¶ 3, and Exhibit D, ¶ 3.)

In addition, Defendants state that the MDOC created special tobacco-free housing units, where even the possession of tobacco was forbidden. Prisoners living in these units were required to sign special non-smoking agreements, and if found in possession of tobacco products or smoking, the prisoners would receive a misconduct ticket and be transferred out of the tobacco-free housing unit. *See* MCF Operating Procedure 01.03.140(H) (Defendants' Exhibit B) and Barbier Affidavit (Defendants' Exhibit C, ¶ 5). In MCF, the tobacco-free housing unit consisted of designated cells within Unit 1. MCF Operating Procedure 01.03.140(H) (Defendants' Exhibit B). This unit, where Plaintiff resided, was tobacco free to the extent that there were enough prisoners requesting tobacco-free housing to fill the unit. Therefore, every prisoner who requested such housing was placed in Unit 1. However, there were not always enough tobacco-free prisoners to fill the unit. *See* MCF Operating Procedure 01.03.140(H) (Defendants' Exhibit B) and Barbier Affidavit (Defendants' Exhibit C, ¶ 4).

Defendant Harry attests that on June 12, 2007, Environmental Sanitarian Tom Vogel conducted an American Correctional Association (ACA) Environmental Health Standards Inspection at MCF and determined that all of the housing units were in compliance with the Indoor Air Quality Standards. (Defendants' Exhibit D, ¶ 3(B).) The report indicates that the air-handling system in Unit 1 provided 50 percent outside air and 50 percent re-circulated air, with all air being filtered. It also noted that each cell was equipped with a window for passive air flow and contained a

mechanical exhaust duct which exhausts 50 cubic feet per minute of air. (Attachment to Defendants' Exhibit D.)

On February 4, 2008, and February 7, 2008, Certified Industrial Hygienist Lyle Edinger conducted a nicotine-detection study in Housing Unit 1 at MCF. Edinger attests that when tobacco is smoked, its presence can be detected in the air and on walls. Edinger tested the air and the walls in Unit 1 and detected no nicotine in the samples. (Defendants' Exhibit E, ¶¶ 6-14.)

In addition, Defendants note that Plaintiff previously filed two suits regarding alleged exposure to ETS which were dismissed at the summary judgment stage. In *McMurry v. Berghuis, et al.*, Case No. 4:02-cv-204 (W.D. Mich. 2004), *aff'd* by 04-1480 (6th Cir. 2004), the court noted that Plaintiff had been found to have personally purchased tobacco products on at least 33 occasions. In addition, the defendants in that case submitted evidence showing that at least 1,141 smoking tickets were issued at the prison over a period of 16 months. (Defendants' Exhibit F, pp. 3-4.) In affirming the district court's opinion, the Sixth Circuit stated that because the prison was non-smoking and misconduct tickets were issued for violations, any alleged imperfect enforcement was not a constitutional violation. (Defendants' Exhibit H.)

In *McMurry v. Caruso, et al.*, Case No. 1:07-cv-905 (W.D. Mich. 2007, *aff'd* by 09-1526 (6th Cir. 2009), Plaintiff again complained of exposure to ETS. In that case, the court found that Plaintiff failed to submit evidence that his asthma was particularly severe or that he otherwise suffered from a serious medical need. In addition, the court found that the subjective element was not met because the prison prohibited smoking and the rules were enforced. (Defendants' Exhibit I, pp. 11-13.) On appeal, the Sixth Circuit stated:

> Here, McMurry submitted receipts from the prison store for two
> inmates which showed that they purchased tobacco. Even assuming
> that the two inmates in question were housed in the non-smoking

> unit, this situation is not comparable to the situation in *Helling*, where the prisoner was housed in a cell with an inmate who smoked five packs per day. Therefore, McMurry failed to present a genuine issue of material fact as to whether he was exposed to unreasonably high levels of cigarette smoke.

(Defendants' Exhibit K, p. 2.)

In his response to the motion for summary judgment, Plaintiff offers the affidavit of prisoner Marcus Staple Bey. Staple Bey attested that in early February of 2008, he was instructed to give Unit 1 at MCF a good cleaning, and to use bleach to clean the walls, rails, bathrooms, air vents, vending machine, and common areas in the unit because testing was going to be conducted in the unit to check for the presence of nicotine. (Plaintiff's Exhibit 2, ¶¶ 2-6.)

In the opinion of the undersigned, Plaintiff has failed to satisfy the objective component for an Eighth Amendment violation. To prove the objective element, the prisoner must first show that he has been exposed to unreasonably high levels of ETS.[2] *Id.* at 35. "More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure to ETS" is necessary to establish the objective component. *Id.* at 36. Second, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* The Supreme Court in *Helling* did not mandate smoke free prisons. *Williams v. Howes,* No. 1:05-cv-817, 2007 WL 1032365, at *14 (W.D. Mich.

---

[2]"Plainly relevant to this determination" was the fact that plaintiff in *Helling* had been moved to a different prison and was "no longer the cellmate of a five-pack-a-day smoker." *Helling,* 509 U.S. at 35. The Supreme Court also observed that the prison had adopted a formal smoking policy restricting smoking to certain areas and where wardens could, contingent on space availability, designate non-smoking areas in dormitory sections. *Id.* at 35-36. The Supreme Court noted that the changed policies could make it impossible for the plaintiff to prove that he would be exposed to an unreasonable risk of ETS with respect to his future health. *Id.* at 36.

- 7 -

Mar. 30, 2007) (citing *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998) and *Mansoori v. Lappin,* No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007)).

Plaintiff's allegations regarding the level of ETS to which he was exposed fail to support the objective component of an Eighth Amendment claim. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). As noted above, air quality testing by the ACA at MCF was completed in June of 2007, and the facility was found to be in compliance with Michigan's environmental health standards. In addition, the February 2008 nicotine study found no detectable levels of nicotine in the unit.

Plaintiff further fails to meet the subjective element of the *Helling* test, i.e., that Defendants were deliberately indifferent to his exposure to unreasonably high levels of ETS. As noted above, Defendants submitted evidence showing that Plaintiff was housed in a tobacco free unit and that inmates who broke the no-smoking rule were given misconduct tickets and removed from the unit. Plaintiff's assertions constitute no more than imperfect enforcement of the rules and do not rise to the level of deliberate indifference. For the reasons set forth above, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

Plaintiff also claims that the alleged exposure to ETS violated his right to freely exercise his religious beliefs. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See, for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See, for example*, *Bell*

*v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See, generally, Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . ., and not the courts, . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

As noted by Defendants in their brief, Plaintiff fails to allege any specific facts showing that a non-neutral prison regulation has impinged on his right to freely exercise his religious beliefs. Therefore, Defendants are entitled to summary judgment on this issue.

Plaintiff also appears to be asserting that Defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA). In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F.Supp.2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx. 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also*, *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one

which renders religious exercise "effectively impracticable"); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). As noted above, Plaintiff has failed to make such a showing.

In addition, Defendants assert that they are entitled to summary judgment on Plaintiff's claim for damages under the RLUIPA because monetary relief is barred by the Eleventh Amendment. Defendants are correct. Because the RLUIPA's "appropriate relief" language does not clearly and unequivocally indicate that the waiver extends to monetary damages, the Eleventh Amendment bars such claims. *Cardinal v. Metrish,* 564 F.3d 794, 801 (6th Cir. 2009). Moreover, Defendants correctly note that any claims for injunctive relief are moot because the MDOC has now instituted an across the board no tobacco permitted policy. Therefore, Defendants are entitled to summary judgment on Plaintiff's RLUIPA claim.

Defendants Caruso, Harry, and Malone also claim that they were not personally involved in the underlying misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

As noted by Defendants Caruso, Harry, and Malone, they did not smoke the cigarettes which caused the alleged ETS, nor did they allow those cigarettes to be smoked. Defendants Caruso, Harry, and Malone only roles in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, Harry, and Malone cannot be liable for such conduct under §

1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Caruso, Harry, and Malone are entitled to summary judgment for lack of personal involvement.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

Finally, Defendants contend that the court should decline to exercise jurisdiction over Plaintiff's state law claims. The undersigned notes that claims raising issues of state law are best

left to determination by the state courts, particularly in the area of prison administration. In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, 465 F.3d 719, 728 (6th Cir. 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S. Ct. 1954 (1992).

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966). Therefore, the undersigned recommends that this court refuse to exercise pendent jurisdiction over Plaintiff's state law claims.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion For Summary Judgment. Accordingly, it is recommended that Defendants' Motion For Summary Judgment (Docket #150) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C.

§ 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                        /s/ Timothy P. Greeley
                                        TIMOTHY P. GREELEY
                                        UNITED STATES MAGISTRATE JUDGE

Dated: June 30, 2010